# R.

RAAB. The CHARLOTTE. See Case No. 2,-
622.

=====

## Case No. 11,519.

### RABAUD et al. v. D'WOLF.

[1 Paine, 580.] [1]

Circuit Court, D. New York.  Oct. Term, 1826.[2]

COURTS — JURISDICTION—CITIZENSHIP—CONTRACTS
—REFUSAL TO SHIP—PLEADING AT
LAW—VARIANCE.

1. To deprive an American citizen of the right
of suing in a circuit court, on the ground of his
not being a citizen of any particular state, there
ought to be very strong evidence of his being a
mere wanderer, without a home.

[Cited in Parkhurst v. Kinsman, Case No. 10,-
761.]

2. One proposed to the plaintiffs, in the pres-
ence of the defendant, to ship them a quantity
of sugars belonging to him, in the defendant's
hands, on receiving an authority to draw on
the plaintiffs for the amount.  It was thereupon
agreed, that the shipment should be made, and
the authority given, on the defendant's engag-
ing by letter to ship the sugars.  The owner of
the sugars accordingly wrote a letter, addressed
to the defendant, desiring him to ship the su-
gars on board such vessel as the owner might di-
rect, consigned to the plaintiffs, and next day
handed it to him.  The defendant wrote "agreed
to," under the letter, and signed his name be-
neath; upon which the authority to draw was
given: *Held*, that the defendant's undertaking
was an original part of the entire transaction,
and that the consideration, moving from the
plaintiffs to the owner of the sugars, which was
not expressed in the letter, might be proved by
parol, as it did not contradict the written agree-
ment; and that the undertaking of the defend-
ant required no consideration moving from the
plaintiffs to him to support it.

3. The declaration alleged an authority to
draw, but not in writing, for 100,000 francs;
the proof was a letter authorizing blank francs
to be drawn for: *Held*, that this was no vari-
ance.

4. The owner of the sugars becoming insol-
vent, wrote the plaintiffs, informing them, that
the vessel which he had intended should take the
sugars would not do so, and that they were at
liberty to make any arrangements with the de-
fendant for the interest of all concerned: *Held*,
that this was an authority under which the
plaintiffs could nominate a vessel, and that the
defendant was bound to ship the sugars in such
vessel, if he did not choose to appoint another.

5. The sugars were to be shipped at New-York
to Marseilles: *Held*, that the measure of dam-
ages, as against the defendant, was the value of
the sugars in New York at the time of his re-
fusal to ship them according to his contract.

This was an action of assumpsit on a prom-
ise of the defendant to ship to the plaintiffs,
at Marseilles, a quantity of sugar.  The dec-
laration contained several special counts, in
which the contract was variously stated; but
those relied on at the trial stated it as fol-
lows:  That David J. Rabaud, Andrew E.

Belknap, and others, the plaintiffs, were mer-
chants at Marseilles, in partnership, under
the firm of Rabaud, Brothers, & Co.; and
that George D'Wolf, of Bristol, Rhode Island,
wishing to draw on them for 100,000 francs,
James D'Wolf, jun., on the 15th of November,
1825, at the city of New York, in considera-
tion that the plaintiffs would authorize such
drawing, promised to ship, for the account of
said George D'Wolf, on board such vessel as
he should direct, 500 boxes white Havana
sugar, consigned to the plaintiffs at Mar-
seilles.  That in consequence the plaintiffs
gave the authority to draw bills to the
amount of 100,000 francs, which were accord-
ingly drawn and duly paid.  That George
D'Wolf afterwards named a vessel lying at
New-York and ready to receive the sugar, on
board of which the defendant ought to have
shipped it, according to his promise, but
which he refused to do.

The defendant pleaded the general issue.

On the trial the plaintiffs read the deposi-
tion of George D'Wolf, taken under a commis-
sion, proving the following facts:  The plain-
tiffs were partners as stated in the declara-
tion, and the plaintiff, Belknap, was also
agent for the house in the United States.  On
the 15th of November, 1825, George D'Wolf
and Belknap being then in the city of New-
York, the former having between 300 and 400
boxes of Havana sugar in the hands of the
defendant, proposed to the latter to increase
the quantity to 500 boxes, and ship them to
the plaintiff's house at Marseilles, on re-
ceiving an authority to draw on account of
the same to the extent of 100,000 francs.  At
this interview, which was in the street, the
defendant was present.  Another interview,
an hour afterwards, at the defendant's count-
ing-room, was proposed by Belknap, who was
then engaged.  At this interview, Belknap
observing that the advance requested was
heavy, a calculation was made by the de-
fendant and one Bull of the value of the 500
boxes of sugar, compared with the amount to
be advanced, the conclusion of which was an
agreement, that the sugars should be shipped,
and the authority given to draw, upon the de-
fendant's engaging by letter to ship the sug-
ars in behalf and on account of George
D'Wolf, which form of a letter the said
George D'Wolf submitted to Belknap, who as-
sented to it, and the defendant having signed
it, the authority to draw the bills was accord-
ingly given.  The letter referred to by the
witness was as follows:  "New-York, 15th
Nov. 1825.  Mr. James D'Wolf, jun.—Dear
Sir:  You will please ship for my account,
on board of such vessel as I shall direct, five
hundred boxes white Havana sugar, consign-
ed to Messrs. Rabaud, Brothers, & Co. Mar-
seilles, and oblige your friend and obedient
servant,    George    D'Wolf."  "Agreed    to,

---

1 [Reported by Elijah Paine. Jr., Esq.]
2 [Affirmed in 1 Pet. (26 U. S.) 476.]

James D'Wolf, jun." The authority to draw was as follows: "New-York, 15th Nov. 1825. Messrs. Rabaud, Brothers, & Co. Marseilles: I have this day authorized George D'Wolf, Esq. to draw on you for ——— thousand francs, and I request you to honour his bills for that amount. Your obedient servant, A. E. Belknap."

At the time of this transaction, George D'Wolf was indebted to the plaintiffs in the sum of 30,000 francs. It did not, however, appear that the defendant knew of this circumstance. The sugars were to be shipped for the purpose of obtaining the 100,000 francs, George D'Wolf preferring the market of Marseilles to that of New-York; the proceeds to be placed in the defendant's hands on the bills being negotiated, in order to further the shipment, and not with reference to the accounts existing between George D'Wolf and the defendant. The plaintiffs were to have the usual commissions for accepting and paying the bills, and for the sale of the produce. The bills were drawn and accepted by the plaintiffs, and, as witness presumed, paid. The sugars which George D'Wolf had in the hands of the defendant, at the commencement of the transaction, amounting to from 300 to 400 boxes, were, 67 of them, remitted from Rhode Island by him to the defendant, on account of which he drew on the defendant for 4,000 dollars, and the remainder were purchased for him by the defendant, for which he gave in payment his own notes of hand. He was at the same time indebted to the defendant to a considerable amount. Belknap, however, was ignorant of every thing in relation to the purchase of the sugars. It was agreed between George D'Wolf and the defendant, that the former should remit the latter the proceeds of the bills when negotiated, upon which verbal promise the defendant granted his signature to the said letter. The defendant, when the letter was presented him, declined signing it until next morning, when he should see the said Bull. The next morning it was signed, and the defendant then pressed George D'Wolf for payment of what was due him. The defendant afterwards wrote George D'Wolf that he should not make the shipment until the remittances were made. It did not appear that Belknap knew of any understanding between George D'Wolf and the defendant. The bills were negotiated in Boston, from which place George D'Wolf was to remit the proceeds to the defendant. He actually remitted only 7,000 dollars. It was the intention of George D'Wolf to have shipped the sugars in a vessel of his own; but having become embarrassed, he wrote Belknap on the 27th of December, 1825, informing him, that owing to this circumstance the vessel which was to have come to New-York to take them, would fail to do so, and that he was at liberty to make any arrangements with the defendant which he might think proper for the interest of all concerned. The

defendant objected to the admission of this letter, and excepted to the decision of the judge allowing it to be read, for the purpose of showing an authority from George D'Wolf to Belknap to appoint a vessel. On the 3d of January, 1826, Belknap communicated this letter to the defendant, and gave him notice of his intention to provide a vessel, and the next day notified him that he had provided a good vessel for the purpose, and required him to ship the sugars in such vessel, or, if he preferred it, to procure another vessel and ship the sugars without delay. All the plaintiffs were proved to be aliens, except Belknap. Several witnesses, whose testimony is stated in the charge of the court, were called to prove that Belknap was a citizen of Massachusetts.

The defendant having moved for a nonsuit, and excepted to the decision of the court disallowing it, called the said Bull as a witness, who testified, that he had been for nine years a confidential clerk of the defendant; that he was present at the interview at the defendant's store on the 15th of November, which lasted 10 or 15 minutes; that the defendant appeared, so far as the witness observed, to take very little interest in the conversation that was going on between George D'Wolf and Belknap, and no conversation of any importance passed between the latter and the defendant; that he, the witness, was writing at the desk, and occupied in his own affairs of business, and did not pay particular attention to the conversation of the parties: That defendant and Belknap might have conversed about the sugars without his knowing it, &c. The defendant offered to prove by said Bull, that there was an express agreement between George D'Wolf and the defendant, at the time the latter signed the letter of the 15th of November, that the former should furnish the latter with funds to purchase the sugars before he should be under any obligation to ship the same. This evidence was not admitted.

W. Slosson, S. B. Ruggles, and C. C. King, for plaintiffs.

T. A. Emmet and J. P. Hall, for defendants, insisted and desired the court to charge the jury:

That, as it appeared by the deposition of George D'Wolf, that the whole contract, agreement, or undertaking of the defendant relative to the shipment of said 500 boxes of sugar, was in writing, no parol evidence could be admitted on the part of the plaintiffs, to prove their declaration, or to alter, enlarge, or in any way vary the written agreement of the defendant. That the letter from George D'Wolf to James D'Wolf, jun., dated November the 15th, 1825, did not prove, nor conduce to prove, the declaration of the plaintiffs, and was not evidence of any contract or agreement be-

tween the plaintiffs and the defendant, or of a promise from the defendant to the plaintiffs. That the letter, if it were any evidence of a contract or agreement between the plaintiffs and defendant, only conduced to prove a collateral undertaking on the part of the defendant, to ship 500 boxes of sugar in behalf of George D'Wolf, and consigned to the plaintiffs, and that the same was void by the statute of frauds. That the whole of the contracts or agreements offered in evidence on the part of the plaintiffs, were nuda pacta and void, both for want of mutuality and want of consideration. That no vessel had ever been designated by George D'Wolf, on board of which the defendant was directed by George D'Wolf to ship said 500 boxes of sugar, in pursuance of the stipulation contained in said letter of the 15th of November, 1825; and, that until such designation, no right of action accrued to the plaintiffs. That the plaintiffs had not offered any sufficient evidence to prove, and had not proved, any authority on the part of Belknap to appoint such a vessel. That there was a material variance between the declaration of the plaintiffs and the proof offered to support it, in this: that the plaintiffs, in their declaration, have set forth as the consideration of the undertaking on the part of the defendant, an authorization on the part of the plaintiffs to George D'Wolf, to draw bills of exchange upon the plaintiffs for 100,000 francs. Whereas it appears, by the deposition of George D'Wolf, that the said authorization on the part of the plaintiffs was in writing, and was for a blank number of francs, no sum being therein specified. That Belknap was not proved to be a citizen of the state of Massachusetts, nor of any state other than New-York; and that, therefore, the plaintiffs had failed to show any right to sustain their action in the courts of the United States, and that this court had no jurisdiction of this cause.

THOMPSON, Circuit Justice. This case is of considerable importance in point of amount, and may be considered as a struggle between two innocent parties, to throw off from their own shoulders, a loss which must fall upon one or the other, by reason of the failure of George D'Wolf. In such cases it is reasonable to expect, that each party will urge with great zeal the points relied upon to effect his object. It has been distinctly stated by the counsel, that, situated as this cause is, it is not probable that a decision here will put an end to the controversy, but that it will be carried to the supreme court of the United States. And to enable the parties to avail themselves of their rights in this respect, and to take exceptions to the opinion I may express, it may be necessary for me not only to be explicit, but to repeat, in some measure, what I have already had occasion to say, in disposing of

the motion for a nonsuit. The result, in the present case, will depend principally upon the questions of law which are involved, and with which you have no concern; some of these questions are, however, so connected with facts, which it is your province to decide, and for the purpose of enabling the parties to avail themselves of whatever exceptions they may have to take, many remarks may be made in the course of my charge to you, which, in strictness, are not to be addressed to a jury.

1. The first question arising is, whether the plaintiffs have shown themselves entitled, under the constitution and laws of the United States, to come into this court to prosecute their action. It has not been denied but that all the plaintiffs, except Belknap, are aliens, and have a right to bring their suit in this court. The declaration avers, that Belknap is a citizen of the state of Massachusetts, and it is contended on the part of the defendant, that this averment has not been proved. From the evidence it appears that Belknap was either born in Boston, or removed there with his father at a very early age, from New-Hampshire, and continued to live in Boston until he went to France, where he remained ten or twelve years, when he returned to Boston. That he is an unmarried man, having no family, lives at lodgings, has rooms, as one of the witnesses understood, hired by the year, and is there about two-thirds of the time. The residue of the time he is absent on business of the firm, of which he is a partner, principally in New-York and Philadelphia, and other cities of the United States. One of the witnesses testified, that on one occasion he went with him to town-meeting to vote at an election—he did not see him vote, but understood he went there for that purpose. All the witnesses, in answer to the general question, where was the home of Belknap, say it was at Boston; that they should address him at that place, as his place of residence, if they did not know of his absence; that letters from abroad are addressed to him at that place. These are the leading and principal facts in evidence as to Belknap's being a citizen of Massachusetts. That he is a citizen of the United States cannot be questioned; and if a citizen of any particular state, within the sense and meaning of the constitution and law, it must be of Massachusetts. No evidence has been offered to raise a doubt on this point. Whenever absent from Boston it was temporarily, and on the business of the plaintiffs. And to deprive an American citizen of the right of suing in this court, on the ground of his not being a citizen of any particular state, there ought to be very strong evidence of his being a mere wanderer, without a home. Belknap does not appear to stand in this situation; his domicil, his home, and permanent residence, may, with the greatest propriety, be said to be in Bos-

ton. There is no pretence that this was merely colourable for the purpose of qualifying himself to bring this action; and to deprive him of that privilege, would be extending their disability beyond the reason and policy of the law. The facts in relation to Belknap do not appear to be in dispute, so far as I have understood them; and if, according to your understanding of the evidence, they are as I have stated, the averment, that he is a citizen of the state of Massachusetts, is sufficiently proved.

2. The next inquiry relates more to the merits of the cause, and embraces the main question upon which the rights of the parties must be decided. The action is founded on a special contract, alleged to have been entered into by the defendant, and which he has not complied with. The declaration contains several counts, in which the cause of action is in some respects laid in different ways, but is substantially, that the defendant, in consideration that Belknap would authorize George D'Wolf to draw on the plaintiffs for one hundred thousand francs, undertook, and promised to ship for account of George D'Wolf, on board such vessel as he should direct, five hundred boxes of white Havana sugar, consigned to the plaintiffs in this cause, accompanied with the necessary averments, and allegations of breaches. And the great question is, whether this contract has been proved by such evidence as to make it legally binding on the defendant. The letter of the 15th of November, 1825, from George D'Wolf to the defendant, requesting him to ship for his account, five hundred boxes of white Havana sugar, consigned to the plaintiffs, and under-written by the defendant, "agreed to," is the principal evidence in the cause to establish the contract. It is said that this letter, under the statute of fraud, does not, on its face, contain any binding contract on the part of the defendant, and that the defects cannot be supplied by parol evidence. This objection, I think, cannot be sustained. The first question to be settled, and which is matter of fact for your determination, is, whether the arrangement between Belknap and George D'Wolf, as to the authority to draw on the house in Marseilles, on the shipment and consignment of five hundred boxes of sugar, and the undertaking of the defendant, were made and entered into at one and the same time, so as to form one entire transaction. The evidence on this point rests principally on the deposition of George D'Wolf. For although Mr. Bull did not hear the defendant assent to the arrangement, yet from his own statement, such an arrangement or contract might have been entered into by the defendant without his hearing it; it is, therefore, at most, but negative kind of evidence, and ought not to outweigh the positive testimony of George D'Wolf, unless he is discredited in some way, of which you will judge. His testimony is in writing, and will be submitted to you when you withdraw to make up your verdict. You will read and judge for yourselves. I understand him to say, that the defendant was with him when they first met in Wall-street, and had some conversation about the authority to draw, and the shipment of the sugar; he, George D'Wolf, then stating to Belknap that he had between three and four hundred boxes of the sugar then in the defendant's possession. That a time was appointed to meet at the defendant's counting-house to negotiate further on the subject. That such meeting did take place, and the agreement was then concluded, as contained in the letter of the 15th of November, 1825. The consideration for their undertaking was the authority given by Belknap to George D'Wolf to draw on the plaintiffs for a hundred thousand francs. This consideration, it is true, although fully proved, is not expressed in the written contract; and one question is, whether it can be supplied by parol evidence; and I think it may be, if the undertaking of the defendant was entered into at the same time with that between Belknap and George D'Wolf, so as to form an entire transaction. This evidence does not in any manner contradict the written agreement, but is perfectly consistent with it. As between the plaintiffs and George D'Wolf, the consideration might clearly be supplied by parol proof. And if the undertaking of the defendant was at the same time, it required no consideration, moving from the plaintiffs to him; the consideration to George D'Wolf was sufficient to uphold and support the contract of the defendant. The undertaking of the defendant to make the shipment, was certainly the principal, if not the sole consideration upon which Belknap authorized the drafts on the plaintiffs. For George D'Wolf says expressly, that he does not believe the authority would have been given without such undertaking by the defendant. So that it might be urged with great force, that the whole credit was given, and rested on the engagement of the defendant to make the shipment and consignment. If the contract of the defendant was entered into at his counting-house, at the time mentioned, it is of no consequence that the letter was not signed until the day after. This was only reducing to form, or putting into the shape agreed upon, and consummating the arrangement, and would have relation, as between these parties, to the time when the agreement was, in point of fact, entered into. But if I should be mistaken in this view of the evidence, and you should be of opinion that the contract between Belknap and George D'Wolf was completed, and unconnected with the engagement of the defendant, before he undertook to make the shipment and consignment, then the evidence is not sufficient to maintain the present action. It would then be a collateral undertaking made subsequent to the principal contract, and would require some

other consideration than that which supported the principal contract. Whether it is indispensable that such consideration should be expressed in the written agreement or not, is unnecessary to decide, because no such consideration has been proved, if it was admissible to supply it by parol evidence.

3. It is said in the next place, that the plaintiff has failed in establishing a right to recover in this action, by reason of a variance between the allegation in the declaration and the proof in support of it, in relation to the letter of advice from Belknap to his co-partners, apprizing them of his having authorized the drafts of George D'Wolf. The declaration alleges, "that in consideration that the plaintiffs would authorize George D'Wolf to draw upon them for one hundred thousand francs, the defendant undertook and promised," &c. But that the written authority shown in evidence, was in blank as to the sum to be drawn, and that in this consisted the variance. This letter being in blank cannot be set up as a variance between the allegation and the proof. The declaration does not state that the authority was in writing, or refer in any way to the letter in question; and George D'Wolf swears. that he was authorized to draw on the plaintiffs for one hundred thousand francs. That in pursuance of such authority, he did draw upon them for that sum, and his bills were accepted and paid. The drafts which accompanied the letter of advice showed the amount, and the bills having been paid, the blank is of no importance in the present action.

4. The next inquiry is, whether any vessel was designated to receive the sugars according to the terms of the agreement. By the contract, the sugars were to be shipped on board such vessel as George D'Wolf should direct. He having become insolvent. wrote a letter to Belknap, authorizing him to make arrangement with the defendant on this subject, and to designate the vessel, which he accordingly did. and gave notice thereof to the defendant. and demanded the shipment of the sugars. This was amply sufficient. The authority reserved to George D'Wolf, to direct in what vessel the shipment should be made, was for his benefit, which he might waive. He was not bound personally to designate such vessel; he might do this by his agent, and the authority given to Belknap was constituting him such agent for that purpose; and the act of Belknap. in this respect, was, in judgment of law, the act of George D'Wolf. And it is in proof. that the vessel designated was in every respect fitted for the purpose. Nor was any objection made by the defendant at the time on this ground; but he declined making the shipment, because George D'Wolf had not furnished him with funds to purchase the sugars; and the objection that the vessel was not designated by George D'Wolf cannot now be set up. The act of his agent was his act, and the evidence therefore fully

supports the contract, as laid in the declaration.

5. The only remaining question is, as to the rule by which the damages are to be ascertained. Upon this subject much of the evidence which has been introduced on the part of the plaintiffs, and the various estimates and calculations which have been submitted to you, may be entirely laid aside, according to the view which I have taken of this question. I concur with the defendant's counsel on this point, that the measure of damages must be the value of the sugars in New-York, at the time of the breach of the contract by the defendant, in refusing to make the shipment, according to his contract. If this was a question between George D'Wolf and the plaintiffs, for settling the amount of the proceeds of the sugars had they been shipped, it might have required the application of different principles. But the breach of contract, on the part of the defendant, consists in not making the shipment and consignment according to his undertaking. He did not undertake to deliver the sugars to the plaintiffs at Marseilles. He had no concern with the transportation or the expenses incident thereto. If he had shipped the sugars on board the vessel designated, consigned to the plaintiffs, his contract would have been complied with. The plaintiffs are accordingly entitled to recover the value of the sugars in New-York, at the time when the defendant was bound by his contract to make the shipment. This amount you will ascertain from the evidence that has been offered you on that subject.

Verdict for the plaintiffs for nineteen thousand nine hundred and fifty dollars eighty-five cents.
[On appeal to the supreme court, the judgment of this court was affirmed. 1 Pet. (26 U. S.) 476.]